IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FRATERNAL ORDER OF POLICE )
   METRO TRANSIT POLICE LABOR )
   COMMITTEE, INC., )
                                       )
        Plaintiff, )
                                       )      1:12cv01387 (LMB/JFA)
v. )
                                       )
WASHINGTON METROPOLITAN AREA )
   TRANSIT AUTHORITY (WMATA), )
                                       )
        Defendant. )

MEMORANDUM OPINION

Before the Court is defendant Washington Metropolitan Area Transit Authority's ("WMATA") Motion for Reconsideration of the June 20, 2013 Memorandum Opinion and Order [Dkt. No. 46] ("Motion for Reconsideration"), which asks the Court to reverse its decision granting summary judgment in favor of plaintiff, denying summary judgment in favor of WMATA, and ordering WMATA to reinstate two police officers. For the reasons that follow, WMATA's motion will be denied.

I.

Plaintiff Fraternal Order of Police Metro Transit Police Labor Committee, Inc. ("FOP") brought this civil action against WMATA seeking reinstatement of two Metro Transit Police officers, Sherman Benton ("Benton") and Mark Spencer ("Spencer"), whose terminations were overturned after Benton and

Spencer appealed to an Arbitration Board ("Board") under a collective bargaining agreement.

The parties filed cross-motions for summary judgment [Dkt. Nos. 15, 27], and following a hearing and supplemental briefing, the Court denied WMATA's motion for summary judgment, granted the FOP's motion for summary judgment, and ordered that WMATA immediately comply with the Board's decisions by reinstating Benton and Spencer as Metro Transit Police officers [Dkt. Nos. 41, 42].

On July 8, 2013, the Court granted WMATA's consent motion to stay the decision pending resolution of WMATA's Motion for Reconsideration and any ensuing appeal [Dkt. Nos. 44, 45].  In the consent motion, WMATA agreed to reinstate Benton and Spencer "to pay status in job duties to be defined by the Transit Police, at the same salaries they were receiving at the time of their terminations," and assign Benton and Spencer "to duties of an administrative-type nature, without the full police powers of [] regular Transit Police officer[s]."

II.

Given more exhaustive treatment of the facts in the June 20, 2013, Memorandum Opinion, only a brief recounting of the relevant facts is necessary here.  WMATA is an interstate compact agency and instrumentality of Maryland, Virginia, and

the District of Columbia that operates the Metrorail and Metrobus systems in the greater Washington, D.C. metropolitan area and is authorized under its Compact to operate a police force, the Metro Transit Police Department ("MTPD").  MTPD officers are charged with enforcing the laws of Maryland, Virginia, and the District of Columbia.  The FOP is the bargaining agent for all police officers.  WMATA and the FOP are parties to a collective bargaining agreement that permits discipline of the FOP's members only "for just cause."  Labor disputes between WMATA and the FOP, including those arising out of WMATA's disciplinary decisions, are subject to binding arbitration.

    WMATA discharged Benton and Spencer for cause in March and April 2011, and the FOP pursued grievances on their behalf through arbitration.  The Board overturned both officers' discharges and ordered that they be reinstated.  In response to the Board's decision, WMATA placed Benton and Spencer on "paid administrative leave" status.

    Consistent with WMATA's practice of requiring its officers to be licensed by all three jurisdictions in which WMATA operates, and because Benton and Spencer had been discharged, they had to be recertified by the Maryland Police Training Commission ("Maryland Commission") before they could resume

police activities in Maryland. Virginia and the District of Columbia did not require reinstated officers to go through recertification.

The recertification process required that the MTPD send the Maryland Commission materials, including copies of the derogatory information that led to the officers' terminations, as well as an application for certification verifying that Benton and Spencer met the Maryland Commission's selection standards for positions as police officers.

Michael A. Taborn, MTPD's Chief of Police at the time, wrote letters to the Maryland Commission explaining the respective officers' terminations and reinstatements. In those letters, Chief Taborn clearly indicated that the MTPD did not favor recertification for either Benton or Spencer. The Maryland Commission denied Benton and Spencer's recertification in July and August of 2012 and neither officer sought review of the Commission's decisions in Maryland state court. Because they were not certified to act as law enforcement officers in Maryland, Benton and Spencer were terminated by WMATA for a second time.

III.

WMATA moves for reconsideration under Federal Rule of Civil Procedure 59(e), which provides that relief may be granted "(1)

to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (citations omitted). Whether to grant or deny a motion under Rule 59(e) is left to the Court's discretion, and "[i]n general reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." Id. (internal quotation marks omitted); see Robinson v. Wix Filtration Corp., 599 F.3d 403, 411 (4th Cir. 2010).

When a motion for reconsideration "raises no new arguments, but merely requests the district court to reconsider a legal issue or to 'change its mind,' relief is not authorized." Pritchard v. Wal-Mart Stores, 3 F. App'x 52, 53 (4th Cir. Feb. 7, 2001) (unpublished opinion) (citing United States v. Williams, 674 F.2d 310, 312 (4th Cir. 1982)); see also Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n.5 (2008) ("Rule 59(e) . . . may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." (internal quotation marks omitted)).

IV.

A. <u>Immunity</u>

WMATA first argues its jurisdictional claim: that the Court's decision misconstrued its position as to immunity. Specifically, WMATA argues that it "is not claiming that it is immune to certain contract claims under § 80 of the Compact . . . [r]ather, WMATA's position is that WMATA's discretionary decision to require Transit Police officers to be lawfully empowered to police in all three of its Signatories, including Maryland, is protected by immunity." Mem. of P. & A. in Supp. of Def. WMATA's Mot. for Recons. ("Def.'s Mem.") at 4.

Contrary to WMATA's argument that the immunity issue was misunderstood in the Court's decision, WMATA's immunity argument was understood and fully addressed. In resolving the conflict between the immunity ordinarily afforded decisions involving the operation of a police force, and a federal court's authority to enforce arbitration awards, the Court found that "to extend WMATA's immunity to all employment actions regarding its police force would render its agreement with the FOP to be bound by arbitral decisions a nullity." Mem. Op. at 18. More specifically, the Court concluded that "[b]y agreeing to arbitrate its labor disputes with the FOP's members, WMATA has waived any immunity that might otherwise shield it from suits to

enforce the awards resulting from those arbitral proceedings." Id.

In its motion for summary judgment, WMATA argued that its "decision to require its police officers to be able to conduct police activities in all three of its Signatory jurisdictions, including Maryland, is a decision immune from judicial second-guessing." Def. WMATA's Opp'n to Pl.'s Cross-Mot. for Summ. J. and Reply to Pl.'s Opp'n to WMATA's Mot. for Summ. J. [Dkt. No. 33] at 2 (citing Martin v. WMATA, 667, F.2d 435, 436 (4th Cir. 1981)). In support of its Motion for Reconsideration, WMATA makes the same argument, that its "discretionary decision to require Transit Police officers to be lawfully empowered to police in all three of its Signatories, including Maryland, is protected by immunity." Def.'s Mem. at 4; see also id. at 8 ("WMATA's decision to require its police officers to [be] able to conduct police activities in all three jurisdictions should be deemed a quintessential governmental function immune from attack." (citing Martin, 667 F.2d at 436)). Because this argument was fully addressed in the Memorandum Opinion, it is not a new argument; accordingly, reconsideration of the Court's decision is not appropriate. See Pritchard, 3 F. App'x at 53; see also Baker, 554 U.S. at 486 n.5; Natural Resources Defense Council v. U.S. Environmental Protection Agency, 806 F. Supp.

7

1263, 1266 n.3 (E.D. Va. 1992), aff'd, 16 F.3d 1395 (4th Cir. 1993) (finding that when issues have been fully considered and disposed of by the court, a slight alteration in a party's argument is not proper grounds for a motion to reconsider); Allmond v. Sec. 8 Dep't of Hous., CIV.A. 03-894-A, 2003 WL 23784041 (E.D. Va. Sept. 25, 2003) aff'd sub nom. Allmond v. Section 8 Dep't of Hous., 89 F. App'x 392 (4th Cir. 2004).

### B. Merits

In its second argument, WMATA claims that the Court made a factual error in finding that WMATA had violated the arbitration decision by not reinstating the officers. Specifically, WMATA argues that the Court's decision is in error because it "in effect assumes that the arbitration decisions resolved this issue [reinstatement] in Plaintiff's favor"; however, "[i]t is undisputed that the arbitration decisions occurred before [the Maryland Commission] denied recertification." Def.'s Mem. at 11. WMATA maintains that it "had already complied with the arbitration decisions in that the officers were on paid administrative leave." Id. at 13. In sum, WMATA argues that because it placed Benton and Spencer on paid administrative leave following the Board's decisions and terminated them only after the Maryland Commission denied their recertification, it complied with the Board's decisions.

8

This argument was also raised in the parties' summary judgment motions and rejected in the Memorandum Opinion. <u>See</u> Mem. Op. at 22 ("WMATA argues that it cannot reinstate Benton and Spencer unless they can perform police activities in Washington, D.C., Maryland, and Virginia, and that this position does not conflict with the arbitration awards because those awards 'did not address the issue of whether WMATA is required to reinstate an officer who is no longer qualified to conduct police activities in Maryland.'" (quoting Mem. of P. & A. in Supp. of Def. WMATA's Mot. for Summ. J. at 12)).

In its Memorandum Opinion, the Court found, among other facts, that through Chief Taborn's letters, "WMATA sought the very condition, lack of certification, that forms the basis for its argument that it cannot comply with the arbitral awards and reinstate the two officers." <u>Id.</u> at 25. The Court went on to conclude that the "letters went far beyond simply providing 'derogatory information' and actively sought to influence the certification process with the apparent goal of avoiding the reinstatements ordered by arbitration." <u>Id.</u> at 26.

In its Motion for Reconsideration, WMATA argues that the Court's concerns regarding Chief Taborn's letters are "without any legal significance," given the MTPD's reporting requirements and other evidence before the Maryland Commission. Def.'s Mem.

at 13. On this point, the Court finds the supplemental materials provided by the parties to be particularly instructive. After the Motion for Reconsideration was filed, the Court asked the parties to submit evidence of how WMATA interacted with the Maryland Commission concerning other police officers who were reinstated after being terminated. In response, the FOP and WMATA submitted records of disciplinary actions directed at WMATA police officers over the past 10 years. Not a single record includes the type of strong, negative rhetoric used by Chief Taborn in his letters to the Maryland Commission concerning Benton and Spencer. See Pl.'s Supplemental Mem. [Dkt. No. 56] at 7-9; Def.'s Supplemental Mem. in Supp. of its Mot. for Recons. [Dkt. No. 57]. Contrary to WMATA's argument, these records are "pertinent to this litigation" because they are strong evidence of WMATA's intention to not comply with the arbitration awards by creating a condition that it could then use to justify not reinstating these officers. See Mem. Op. at 27; see also id. at 25 (finding that Chief Taborn's letters demonstrate that "WMATA sought the very condition, lack of certification, that forms the basis for its argument that it cannot comply with the arbitral awards and reinstate the two officers."). Again, all of these issues were

addressed in the Memorandum Opinion, and there is no new law or evidence in the Motion for Reconsideration justifying relief.

V.

The Court finds that WMATA has not raised any new arguments, cited any intervening change in controlling law, provided any new evidence, or established that reconsideration is necessary to correct a clear error of law or prevent manifest injustice. Instead, WMATA's motion essentially asks the Court to "change its mind."

The Court has reviewed its original decision and is fully satisfied that it reached the correct conclusion. For the reasons stated in this Memorandum Opinion and the Opinion of June 20, 2013, WMATA's Motion for Reconsideration will be denied.

Entered this 27th day of March, 2014.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

11